IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 5:03-CR-30113 |
| v. | ) | |
| | ) | |
| JANET MARIE THOMPSON, | ) | |
| | ) | By: Michael F. Urbanski |
| Defendant | ) | Chief United States District Judge |

## MEMORANDUM OPINION

This matter is before the court on defendant Janet Marie Thompson's pro se motion for early termination of supervised release. ECF No. 423. For the reasons stated below, the court **DENIES** Thompson's motion.

On October 9, 2003, Thompson was indicted on three counts related to drug trafficking. In Count One, she was charged with conspiring to possess with intent to distribute 500 grams or more of a mixture containing methamphetamine and 50 grams or more of methamphetamine, and possessing with intent to distribute 500 grams or more of cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1). In Count Two, Thompson was charged with engaging in a continuous criminal enterprise by committing or causing the commission of three or more violations of 21 U.S.C. §§ 841 and 846 by conspiring to distribute cocaine and methamphetamine from 1985 through August 2001 and by using or carrying a firearm during and in relation to a drug trafficking crime on or about August 16, 1999, all in violation of 21 U.S.C. § 848(e)(1)(A). In Count Three, Thompson was charged with using or carrying a firearm during and in relation to a drug-trafficking crime and possessing a firearm in

1

furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Indictment, ECF No. 5.

Pursuant to a written plea agreement, Thompson pled guilty to Counts Two and Three on May 4, 2004. Plea Agreement, ECF No. 111. On August 31, 2004, Thompson was sentenced to terms of 180 months on Count Two and 84 months on Count Three, to run consecutively, for a total of 264 months. Her sentence was to be followed by a five-year term of supervised release. J., ECF No. 242. On April 7, 2015, Thompson's sentence on Count Two was reduced to 143 months pursuant to Amendment 782 to the United States Sentencing Guidelines § 1B1.10, and 18 U.S.C. § 3582(c)(2). Her sentence on Count Three remained the same, 84 months, making her total sentence 227 months, to be followed by the 5-year term of supervised release. Order, ECF No. 323. Thompson was released from incarceration to begin her term of supervised release on July 19, 2019. She has served more than three years of her five-year term.

The court sought input from the United States Probation Officer who supervises Thompson. The officer advised that Thompson was placed on his administrative caseload in June 2022 and has done well.

The officer noted that Thompson was identified as the leader of a very large drug trafficking organization and evidence showed that she used threats of violence to intimidate at least one individual who owed a drug debt to the organization. According to the Presentence Investigation Report (PSR) in her case, Thompson began trafficking in drugs in 1985 and continued until August 2001. PSR, ECF No. 380 ¶ 18. She recruited other people to act as sub-distributors, collectors, and enforcers. Id. ¶ 19. During a search of Thompson's home in

2001 officers found drugs, cash, and thirteen firearms, including a Colt AR-15 and a Tech 9 submachine gun. Id. ¶ 25. A conservative estimate of Thompson's distribution activities showed she was responsible for distributing at least 200 pounds of methamphetamine, 25 kilograms of cocaine, and 100 pounds of marijuana. Id. ¶ 26.

While incarcerated, Thompson had no disciplinary sanctions and she worked as a firefighter and hazmat specialist. She also worked in UNICOR, safety, commissary, and the chapel. Letter, ECF No. 425. Within a week of being released from prison, Thompson obtained her driver's license and began a job. She has since started her own cleaning business. All drug screens have been negative and in February 2021 her conditions of supervision were modified to remove the requirement for substance abuse treatment.

While incarcerated, Thompson was diagnosed with melanoma and when she was released from prison she discovered that the cancer had spread. She is participating in a treatment study where she receives drug infusions at the University of Virginia every three weeks and she provided the probation officer with proof of upcoming treatments. She believes that she has four or five more months of treatment remaining and has been responding well to the treatment so far. Thompson told the probation officer that she is seeking early termination to make life easier while she is being treated for her illness and also to make it easier for her to visit her daughter in Philadelphia. The officer advised that even though Thompson has adjusted very well to supervision, the nature of her offense, even though it occurred long ago, made him hesitant to recommend early termination.

The government acknowledges that Thompson has done well on supervised release but opposes early termination for her based on the nature of her offense. The government

3

points to the long length of the conspiracy and the vast amount of drugs for which Thompson was responsible as factors weighing against early termination. The government argues that early termination would not afford adequate deterrence to her criminal conduct. Resp., ECF No. 424 at 3–4.

Pursuant to 18 U.S.C. § 3583(e), a court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), terminate a period of supervised release at any time after the expiration of one year of supervised release if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice. The following factors are to be considered: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the United States Sentencing Guidelines; (4) any pertinent policy statement issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentencing disparities among defendants; and (6) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

Courts have discretion to grant early termination of supervised release, even when the conditions for termination are met. Folks v. United States, 733 F.Supp.2d 649, 651 (M.D.N.C. 2010). In addition, the inquiry is broader than the individual's conduct. Id. (citing United States v. Pregent, 190 F.3d 279, 282-83 (4th Cir. 1999)). "Circumstances that justify early discharge

4

have included exceptionally good behavior that makes the previously imposed term of supervised release 'either too harsh or inappropriately tailored to serve' general punishment goals." Id. (quoting United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997)). Neither the passage of time nor full compliance with the terms of supervised release are sufficient bases to warrant early termination. Id. at 652 (collecting cases). But "[a]llocation of scarce resources counsels in favor of terminating supervision in cases . . . where services and oversight are no longer needed." United States v. Lyons, No. CR DKC 13-0282-3, 2020 WL 7769782, at *2 (D. Md. Dec. 30, 2020) (granting motion for early termination of supervised release where the parolee, convicted of a drug trafficking conspiracy and possession of a firearm in furtherance thereof, was transitioning "very well" and he consistently tested negative in random drug testing).

Turning to the § 3553(a) factors and looking at the nature and circumstances of the offense, Thompson was convicted of participating in a long-running, far-reaching conspiracy responsible for supplying a very large amount of drugs to users in Virginia. She possessed high-powered weapons and threatened violence toward people who owed her money. The court finds that the nature of Thompson's offense weighs against early termination of supervised release.

Regarding Thompson's history and characteristics, Thompson reported being abused by her stepfather from the age of 3 to 12 and that she moved in with an aunt and uncle when she was 15 years old. PSR, ECF No. 380 ¶ 52. She had no history of mental health treatment, but said she suffered from anxiety and emotional problems related to the abuse. She reported using marijuana beginning when she was 15 years old and she began using methamphetamine

when she was 25 years old. Id. ¶¶ 55, 56. Thompson had very little criminal history prior to engaging in the drug trafficking conspiracy. Id. ¶¶ 43-50. The court finds that Thompson's history and characteristics are neutral factors in determining whether early termination of supervised release is appropriate.

As described above, Thompson has done well since being placed on supervised release and has been compliant with the terms of release. All drug screens have been negative and she has maintained employment. The court credits Thompson with doing well since her release and finds this factor weighs in favor of early termination. Regarding Thompson's health issues, although she told her probation officer that she is seeking early termination to make treatment easier, she did not describe how being on supervised release makes it difficult to obtain the health care she needs. Also, Thompson may visit her daughter in Philadelphia by seeking approval from the probation officer. She has not indicated that any prior requests for travel have been denied.

Looking at the need for the sentence to provide deterrence to criminal conduct and protect the public, the court finds that having Thompson remain on supervised release will provide benefits to both Thompson and the public. Thompson has been successful on supervised release with the structure and guidance she has received from her probation officer. Having her continue on the administrative caseload for supervised release assures that she will be held accountable for her conduct as she enjoys reduced supervision and increases the chances that she will enjoy long-term success when her supervision ends.

Regarding the established sentencing range for the category of Thompson's offenses, she faced a statutory term of supervised release of five years to life on Count Two and a

6

maximum term of five years on Count Three. PSR, ECF No. 380 ¶ 67; 21 U.S.C. § 848; 18 U.S.C. § 3583(b)(1). Her United States Sentencing Guidelines range for supervised release was five years. PSR, ECF No. 380 ¶ 68; USSG § 5D1.2(a)(1). The fact that Thompson is serving the minimum term of supervised release on Count Two and has served only a little more than three years of the term weighs against early termination. None of the remaining § 3553(a) factors weigh either in favor or against early termination of supervised release.

Having considered the § 3553(a) factors and the opinion of the probation officer overseeing Thompson's supervised release, the court **DENIES without prejudice** Thompson's motion for early termination. To be sure, Thompson's accomplishments to date on supervision are positive. Nevertheless, the court remains concerned about the stability of Thompson's success given her long involvement and her leadership role in the drug trafficking conspiracy. Having Thompson continue on supervised release will provide her with an additional period of accountability and also will serve to protect the community.

An appropriate order will be entered.

It is so **ORDERED**.

ENTERED: November 7, 2022

Michael F. Urbanski
Chief United States District Judge

7